UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------X
                                        :
BEEKMAN INVESTMENT PARTNERS, L.P.,      :
                                        :
                    Plaintiff,          :      05 CIV. 8746 (DLC)
                                        :
        -v-                             :      OPINION & ORDER
                                        :
ALENE CANDLES, INC., and PAUL K. AMATO, :
                                        :
                    Defendants.         :
                                        :
----------------------------------------X

Appearances:

For Plaintiff:
Thomas M. Mullaney, Esq.
Law Offices of Thomas M. Mullaney
708 Third Avenue, Suite 2500
New York, NY 10017

For Defendants:
Judith Lockhart, Esq.
Carter Ledyard & Milburn LLP
2 Wall Street
New York, NY 10005


DENISE COTE, District Judge:

    Defendants move to dismiss plaintiff's complaint in this

diversity action for failure to state a claim.  For reasons

described below, the motion to dismiss is converted to a motion

for summary judgment and is granted.


                            BACKGROUND

    This dispute arises out of negotiations for the purchase by

plaintiff Beekman Investment Partners, L.P. ("Beekman") of all of

the stock of defendant Alene Candles, Inc. ("Alene"), from its

sole shareholder defendant Paul Amato.  The following facts are

undisputed.

As part of the negotiations, the parties signed a letter of intent dated April 19, 2005 ("LOI"), outlining the terms that would govern the transaction between Amato and Beekman. The letter begins with an expression of Beekman's interest in pursuing the purchase, and a description of its qualifications and strengths that would enable it to complete the transaction in a satisfactory manner. The introduction closes by stating that Beekman "intend[s] to commit the resources to completing a transaction by your requested timetable of mid-June. To that end, below please find a detailed summary of terms with which we would proceed to close the Transaction."

On the following pages, these terms are grouped in a two-column table; the left column contains a brief title and the right column contains the substance of a particular term, in either a complete sentence or a list of bullet points. One row in the table is entitled "Expense Reimbursement." The substantive text reads "Seller [Amato] will reimburse the Buyer [Beekman] and [a holding company] reasonable expenses related to the Transaction not to exceed $100,000 if the Transaction is not completed." Another row, entitled "Exclusivity," reads "Seller will enter into an Exclusivity Agreement ("EA") attached as Exhibit A . . . ." There are eleven rows in all.

Immediately following this table, the text resumes "The above terms do not constitute a definitive offer, acceptance, contract, or agreement, all of which require the completion of

our due diligence and will be incorporated in a definitive purchase agreement duly executed by the Seller and Beekman." The final paragraph of the letter begins "We are prepared to commit the resources to finalize our due diligence, negotiate a definitive purchase agreement and close a transaction by June 30th." The letter includes a signature block for John Troiano, Chief Executive Officer of Beekman, and is "Agreed and Accepted" by Amato on a separate signature block.[1]

Attached to the letter as Exhibit A is a second letter from Troiano to Amato. The introductory paragraph of this second letter reads "[Beekman] has been engaged in discussions with you regarding [Alene], of which you are the principal shareholder, concerning Beekman's proposal of April 19, 2005 to purchase the Company (the "Acquisition"). This letter sets forth our understanding of certain agreements reached between Beekman and you in connection with such negotiations." Four numbered paragraphs follow.

The first paragraph states that "[i]n consideration of the time and expense to be incurred by Beekman in negotiating a Purchase Agreement and conducting its due diligence review for the proposed Acquisition," Amato will negotiate exclusively with Beekman until the earlier of "the date upon which a Purchase

_____

[1] The copy of the letter submitted to the Court by defendants does not appear to be signed by Troiano, but defendants aver in their Memorandum of Law that the letter was signed by Troiano. Viewing the evidence in the light most favorable to the plaintiff, who argues that the letter amounted to a contract, it may be assumed that Troiano signed the letter.

3

Agreement among Beekman, the Company, and you is signed" or July 19, 2005.  The second requires Amato to provide Beekman with access to all of Alene's property and records.  The third states that "[t]his letter and the agreements contained herein are [] intended to constitute a binding agreement between the parties with respect to the subject matter hereof."  And the fourth provides that the letter may not be amended or modified except in a writing signed by both parties.  The letter has a signature block for Troiano and is "Acknowledge and Agreed to" by Amato. Nowhere in this exhibit is there any mention of expense reimbursement.

The parties never executed a purchase agreement, nor did the planned transaction occur.  Beekman claims in its Complaint that it elected not to complete the transaction because the financial projections upon which the transaction was planned were adjusted significantly downward by Alene two months after the LOI was signed.  Nevertheless, Beekman did incur at least $100,000 of what it believes were reasonable expenses related to the intended purchase.  It seeks recovery of those expenses in this action under four claims: breach of contract, breach of the implied covenant of good faith and fair dealing, promissory estoppel, and unjust enrichment.

Defendants moved to dismiss the Complaint for failure to state a claim under Fed. R. Civ. P. 12(b)(6).  In support of its opposition to defendants' motion, Beekman submits two communications from Amato to Troiano.  The first is an email,

dated April 18, 2005, wherein Amato expresses his willingness "to sign a revised LOI and your 'Exhibit A' (Exclusivity Agreement)" and indicates a number of changes he would like to see made to the letter of intent.  One change is to the expense reimbursement term: Amato states "We would have to pay your costs only if the deal did not close."  The second communication is a letter dated September 20, 2005.  In this letter, Amato expresses "shock[] by the assertion that these expenses [incurred during due diligence] are my responsibility."  Amato explains his understanding that when the parties discussed the letter of intent, Troiano "stated that this clause was to protect you in case the owner got 'cold feet' and did not close on the transaction after you had incurred costs relating to the accounting and legal due diligence."  He reiterates this understanding at the close of the letter.

<u>DISCUSSION</u>

1. Conversion of the Motion to Dismiss to a Motion for Summary Judgment

Fed. R. Civ. P. 12(b) provides that if, on a motion to dismiss for failure to state a claim, "matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment."  For the purposes of a Rule 12(b)(6) motion, "the complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference."

<u>Int'l Audiotext Network, Inc. v. Am. Tel. and Tel. Co.</u>, 62 F.3d 69, 72 (2d Cir. 1995). Although the LOI was not attached to or incorporated in the Complaint by plaintiff, it is not matter outside the pleadings because "the complaint relies heavily upon its terms and effect, which renders the [LOI] integral to the complaint." <u>Chambers v. Time Warner, Inc.</u>, 282 F.3d 147, 153 (2d Cir. 2002). The Court may therefore "take the document into consideration in deciding the defendant's motion to dismiss, without converting the proceeding to one for summary judgment." <u>Int'l Audiotext</u>, 62 F.3d at 72.

The documents submitted by Beekman, on the other hand, may not be properly considered as part of a motion to dismiss. Consideration of these documents, and of the related factual representations included in Beekman's Memorandum of Law would be error. <u>See</u> <u>Friedl v. New York</u>, 210 F.3d 79, 83-84 (2d Cir. 2000). Although, as will be explained below, this material is of little relevance to the legal question presented by defendants' motion, the motion is converted to one for summary judgment and Beekman's documents will be considered in that context.[2]

---

[2] A district court must ordinarily give notice to the parties before converting a motion to dismiss to a motion for summary judgment. <u>See, e.g.</u>, <u>Kopec v. Coughlin</u>, 922 F.2d 152, 154-55 (2d Cir. 1991). "A party is deemed to have notice that a motion may be converted . . . if that party should reasonably have recognized the possibility that such a conversion would occur." <u>Sira v. Morton</u>, 380 F.3d 57, 68 (2d Cir. 2004) (citation omitted). Having itself submitted the matter outside the pleadings, Beekman "plainly should have been aware the likelihood of such a conversion. Under such circumstances, [Beekman] cannot complain that [it was] deprived of an adequate opportunity to

2.  Breach of Contract

"Summary judgment is appropriate if the evidence offered, viewed in the light most favorable to the non-moving party, demonstrates that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  <u>Sira v Morton</u>, 380 F.3d 57, 68 (2d Cir. 2004). The parties are in agreement that New York law governs.  "Under traditional principles of contract law, questions as to what the parties said, what they intended, and how a statement by one party was understood by the other are questions of fact . . . ."  <u>Ronan Assocs., Inc. v. Local 94-94A-94B, Intern. Union of Operating Eng'rs, AFL-CIO</u>, 24 F.3d 447, 449 (2d Cir. 1994) (applying New York law).  But once the facts are established, "the matter of whether or not there was a contract . . . is an issue of law."  <u>Id.</u>; <u>see also</u> <u>Evolution Online Sys. v. Koninklijke PTT Nederland N.V.</u>, 145 F.3d 505, 508 (2d Cir. 1998) (same).[3]

_____

provide the materials [it] deemed necessary to support [its opposition to defendants' motion]."  <u>Id.</u> (citation omitted); <u>see also</u> <u>Gurary v. Winehouse</u>, 190 F.3d 37, 43 (2d Cir. 1999) (noting that plaintiff who invited the court to consider matter outside the pleadings "cannot be heard to claim that he was surprised when the district court accepted his invitation").

[3] Thus, even on a motion to dismiss, where a court must accept as true all of the factual allegations in a complaint, it is "not obliged to accept the allegations of the complaint as to how to construe such documents."  <u>Subaru Distributors Corp. v. Subaru of America, Inc.</u>, 425 F.3d 119, 122 (2d Cir. 2005); <u>see also</u> <u>Int'l Audiotext</u>, 62 F.3d 69, 71-72 (2d Cir. 1995).

Similarly, under New York law, "the initial interpretation of a contract is a matter of law for the court to decide. The key inquiry at this initial interpretation stage is whether the contract is unambiguous with respect to the question disputed by the parties." Int'l Multifoods Corp. v. Commercial Union Ins. Co., 309 F.3d 76, 83 (2d Cir. 2002) (citation omitted); see also K. Bell & Assocs., Inc. v. Lloyd's Underwriters, 97 F.3d 632, 637 (2d Cir. 1996). If language in a contract is susceptible to more than one interpretation, then a court may look to extrinsic evidence to determine the parties' intent and the meaning of the words becomes a question of fact unfit for summary judgment. But "[w]here the contract is clear and unambiguous on its face, the intent of the parties must be gleaned from within the four corners of the instrument, and not from extrinsic evidence." British Intern. Ins. Co. Ltd. v. Seguros La Republica, S.A., 342 F.3d 78, 82 (2d Cir. 2003) (quoting Rainbow v. Swisher, 72 N.Y.2d 106, 109 (1988)). The meaning of an unambiguous contract is a question of law and may be decided on summary judgment. Alexander & Alexander Servs., Inc. v. These Certain Underwriters at Lloyd's, London, England, 136 F.3d 82, 86 (2d Cir. 1998).

The dispute over the first cause of action turns on the meaning and effect of a single sentence in the LOI: "The above terms do not constitute a definitive offer, acceptance, contract or agreement, all of which require the completion of our due diligence and will be incorporated in a definitive purchase agreement duly executed by the Seller and Beekman." Defendants

argue that this sentence definitively establishes that the LOI did not create a binding contract between the parties. Beekman acknowledges the literal meaning of the sentence, but argues that it should not be given its literal meaning. The better reading of the sentence, Beekman suggests, is that it applies only to the purchase of Alene (which obligation would arise only upon the execution of a purchase agreement), and not to the reimbursement of expenses (which obligation arises from mention of the term in the LOI).

This sentence is unambiguous: it clearly provides that the terms of the LOI, which include the express reimbursement term, do not create a binding agreement between the parties. Beekman's attempts to manufacture ambiguity are unavailing. It is true that a catch-all provision appended to a list may create ambiguity if a literal reading of the phrase would render the specifically enumerated items meaningless. <u>See</u> <u>Rothenberg v. Lincoln Farm Camp, Inc.</u>, 755 F.2d 1017, 1019-1020 (2d Cir. 1985). But the disputed language in this instance is not a catch-all phrase concluding a list of examples; rather, it stands alone. A literal reading of such stand-alone language does not create ambiguity. <u>See</u> <u>Int'l Klafter Co., Inc. v. Cont'l Cas. Co.</u>, 869 F.2d 96, 100 (2d Cir. 1989) (distinguishing <u>Rothenberg</u>). Beekman would read into this stand-alone provision an exception, supposedly implied by an earlier term in the letter, that would eviscerate its clearly intended purpose, namely to demarcate the entire LOI as part of a non-binding negotiation preliminary to a

binding contract.  Such an interpretation does not give effect to the plain meaning of the words of the letter, and is therefore improper.  See id. at 99.

A literal reading of this sentence does not, contra Beekman, render the expense reimbursement term meaningless.  The term continues to have as much meaning as every other term listed in the LOI, i.e., as a reflection of the current state of negotiations, and would have had legal effect if the parties had successfully concluded their efforts and executed a purchase agreement.  Nor would the term be meaningless in a final contract.  The reimbursement term in an executed contract would provide Beekman with a contractual right to recover costs incurred before the execution of the contract, which for the reasons described in this Opinion, would not have otherwise been recoverable.

Moreover, Beekman offers no reason why its argument should not apply to every other specific term listed in the LOI such that every one would be rendered meaningless by the disputed sentence.  The logical result of Beekman's argument, then, is that all of the terms summarized in the LOI should be considered binding on both parties, notwithstanding an explicit statement of intent to the contrary.  For reasons discussed below, such a result would violate well settled principles of New York contract law.

Consideration of the document as a whole supports a literal interpretation of the disputed sentence.  See id. (advising

courts to look at "all corners of the document rather than view sentences or clauses in isolation"). As the LOI makes clear, the terms described in the table are the "terms with which we <u>would proceed</u> to close the Transaction" should the parties formally agree to carry through with it. (Emphasis added.) That the transaction is still very much in the negotiation stage is made immediately clear by the first two paragraphs of the letter, which have the ring of a solicitation, encouraging Amato to choose Beekman as his partner in a new endeavor.

More persuasive still is the treatment provided in the LOI for the exclusivity term. Rather than being simply included in the "detailed summary of terms," the exclusivity requirement is the subject of an exhibit to the LOI. This exhibit expressly acknowledges that the parties were still in the process of negotiating the sale of Alene. It observes that the parties "have been engaged in discussions . . . concerning Beekman's proposal of April 19, 2005." It then "sets forth [the parties'] understanding of certain agreements reached . . . in connection with such negotiations" and states explicitly that it is "intended to constitute a binding agreement between the parties." <u>Id.</u> This express statement of intent would be unnecessary if the LOI had already created a contractual relationship between the parties. Its inclusion suggests that the parties recognized the need for further action in order to create a binding agreement between them. Viewed as a whole, the LOI and its attachment establish a general rule in one section (no binding agreement)

and a more detailed regime in another (certain specific provisions subject to a limited binding agreement). This organization resembles the structure of the agreement considered in Klafter, where the Second Circuit held that the general rule should be read literally. See Klafter, 869 F.2d at 99-100.

Because the disputed sentence is unambiguous, under New York law, its meaning must be gleaned solely from "within the four corners of the instrument, and not from extrinsic evidence." British Int'l, 342 F.2d at 82 (citation omitted); see also Klafter, 869 F.2d at 100 ("Since the language of the contracts is unambiguous, there is 'no need here to examine the conduct of the parties over the intervening years to ascertain their intent.'") (quoting Slatt v. Slatt, 64 N.Y.2d. 966, 967 (1985)). The communications from Amato to Troiano submitted by Beekman in support of its opposition are extrinsic evidence, and therefore are not relevant to the interpretation of this part of the LOI. Moreover, the lack of ambiguity makes the meaning of this language, and consequently its effect on contract formation, a question of law proper for summary judgment.

"New York follows the generally accepted rule that when parties negotiating a proposed contract express an intent not to be bound until their negotiations have culminated in the execution of a formal contract, they cannot be bound until that event has occurred." Jim Boulton Corp. v. William Wrigley Jr. Co., 902 F.2d 1074, 1081 (2d Cir. 1990). "Because of this freedom to determine the exact point at which an agreement

becomes binding, a party can negotiate candidly, secure in the knowledge that he will not be bound until execution of what both parties consider to be [a] final document." Winston v. Mediafare Entm't Corp., 777 F.2d 78, 80 (2d Cir. 1986); see also R.G. Group, Inc. v. Horn & Hardart Co., 751 F.2d 69, 74 (2d Cir. 1984) (noting that this rule helps "give parties the power to contract as they please"). Thus, "when a party gives forthright, reasonable signals that it means to be bound only by a written agreement, courts should not frustrate that intent." R.G. Group, 751 F.2d at 75.

Against the background of this rule, "a party that does not wish to be bound at the time of the preliminary exchange of letters can very easily protect itself by not accepting language that indicates a 'firm commitment' or 'binding agreement.'" Adjustrite Systems, Inc. v. GAB Business Services, Inc., 145 F.3d 543, 550 n.7 (2d Cir. 1998) (citation omitted). The parties in this case went even further, stating explicitly and unambiguously that they did not wish to be bound by the terms laid out in the letter of intent.[4] When such precautions have been taken, New York contract law does not recognize a breach of contract claim if the hoped-for contract does not materialize. See, e.g.,

---

[4] As before, the Court does not look to extrinsic evidence to interpret unambiguous language. See Feick v. Fleener, 653 F.2d 69, 79 (2d Cir. 1981) ("[S]ince there is no ambiguity in Fleener's letter that he did not intend it to be a formal contract . . . the District Court was not called upon to resolve any ambiguity as to appellees' intention by resort to sources external to the letter.").

Aksman v. Xionqwei Ju, 799 N.Y.S.2d 493, 495 (1st Dep't 2005) (holding that "the letter of intent, which is clearly a preliminary non-binding proposal to agree, conclusively negates plaintiff's breach of contract claim"); Inside Swing v. LeChase, 653 N.Y.S.2d 474, 475 (4th Dep't 1997) (dismissing a breach of contract claim where a "Non-Binding Letter of Intent Agreement leaves several material terms for future negotiations and expressly provides that it is not binding and preliminary to the negotiation of a lease agreement") (citation omitted).

In the alternative, Beekman argues that the expense reimbursement term should be enforceable, notwithstanding the statement of intent to the contrary, because subsequent negotiations have "ripened to an enforceable intent." The four-factor test that Beekman urges the Court to apply is designed to "help determine whether the parties intended to be bound in the absence of a document executed by both sides." Winston, 777 F.2d at 80; see also Evolution Online, 145 F.3d at 508-09 (same). No such help is necessary, though, where the parties have joined in an explicit statement of their intent to not be bound. For "if either party communicates an intent not to be bound until he achieves a fully executed document, no amount of negotiation or oral agreement to specific terms will result in the formation of a binding contract." Winston, 777 F.2d at 80. To accept Beekman's argument would be effectively to eliminate the protection provided by New York contract law to negotiating parties who explicitly state their intent to not be bound until a

14

contract is executed, which could have profoundly disruptive consequences for business.  Cf. R.G. Group, 751 F.2d at 75 (explaining that the freedom to avoid binding agreements during negotiations "is especially important when business entrepreneurs and corporations engage in substantial and complex dealings").

Application of that law requires a conclusion that, as a matter of law, no contract existed between the parties with respect to expense reimbursement.  Without a binding agreement between the parties, Beekman cannot bring a cause of action for breach of contract.  Summary judgment is therefore granted to defendants with respect to Beekman's first cause of action.


3.  Breach of Implied Covenant of Good Faith and Fair Dealing

Beekman's second cause of action alleges a violation of an implied covenant of good faith and fair dealing.  "Implicit in all contracts is a covenant of good faith and fair dealing in the course of contract performance."  Dalton v. Educ. Testing Serv., 87 N.Y.2d 384, 389 (1995).  These duties arise from the formation of a contractual relationship.  Consequently, a "cause of action for breach of an implied duty of good faith and fair dealing . . . [is] properly dismissed for lack of a valid and binding contract from which such a duty would arise."  American-European Art Assocs., Inc. v. Trend Galleries, Inc., 641 N.Y.S.2d 835, 836 (1st Dep't 1996).

Beekman might have argued, but did not, that the parties had entered what the Second Circuit, after reviewing New York law,

has referred to as a "Type II" preliminary agreement.  Binding
preliminary agreements generally fall into one of two categories.
Brown v. Cara, 420 F.3d 148, 153 (2d Cir. 2005).  "Type I"
preliminary agreements are complete, "reflecting a meeting of the
minds on all the issues perceived to require negotiation."  Id.
(citation omitted).  They are preliminary "only in the sense that
the parties desire a more elaborate formalization of the
agreement" and therefore "bind[] both sides to their ultimate
contractual objective."  Adjustrite, 145 F.3d at 548 (citation
omitted).  Beekman, hoping to enforce a specific term of the LOI
in its first cause of action, implicitly but necessarily argued
that the letter constituted a Type I agreement.

        "Type II" preliminary agreements are more limited: they
"do[] not commit the parties to their ultimate contractual
objective but rather to the obligation to negotiate the open
issues in good faith and in an attempt to reach the objective
within the agreed framework."  Id. (citation omitted).  A party
to such an agreement has no right to demand performance of the
transaction, but it can enforce the obligation to negotiate in
good faith that it creates.  See Brown, 420 F.3d at 156-59.

        Thus, even if the LOI did not contractually bind the parties
to its specific terms, Beekman might still have stated a claim
for breach of this duty of good faith if the LOI constituted a
Type II preliminary agreement.  Unfortunately for Beekman,
however, the LOI is not a Type II agreement for the same reason
that it is not a Type I agreement.  When deciding whether a

preliminary agreement of either type exists, "[t]he key, of
course, is the intent of the parties: whether the parties
intended to be bound, and if so, to what extent." Adjustrite,
145 F.3d at 548-49.  The LOI, as discussed above, contains an
explicit statement of the parties' intent not to be bound in any
way (except to the terms of the exclusivity agreement, wherein a
contrary intent was expressly stated).  Whether the statement
that the parties "have a strong interest in moving forward in
good faith" would suffice on its own to signal an intent to
create a contractual obligation is uncertain; that it does not
when it immediately follows an expression of intent to not be
bound, as it does in the LOI, is clear.  There being no agreement
of any kind that would give rise to a duty to act in good faith,
summary judgment is granted to defendants with respect to
plaintiff's second cause of action.


4. Promissory Estoppel

    Beekman's third cause of action seeks to enforce the expense
reimbursement term on a theory of promissory estoppel.  "A cause
of action for promissory estoppel under New York law requires the
plaintiff to prove three elements: 1) a clear and unambiguous
promise; 2) reasonable and foreseeable reliance on that promise;
and 3) injury to the relying party as a result of the reliance."
Kaye v. Grossman, 202 F.3d 611, 615 (2d Cir. 2000).  A promise
made in the course of negotiations that is conditional on the
signing of a contract is not a "clear and ambiguous promise."

17

R.G. Group, 751 F.2d at 79; Chaterjee Fund Mgmt., L.P. v.
Dimensional Media Assocs., 687 N.Y.S.2d 364, 365 (1st Dep't
1999). Moreover, the due diligence performed by Beekman was
explicitly made a condition precedent to the execution of the
contract that would have provided for the reimbursement of these
expenses. Under New York law, this precludes detrimental
reliance as a matter of law. See Chaterjee, 687 N.Y.S.2d at 365;
see also Reprosystem, B.V. v. SCM Corp., 727 F.2d 257, 265 (2d
Cir. 1984) (finding no unambiguous promise or reasonable reliance
where "[t]he negotiations of the parties as reflected in the
draft agreements made it clear that the obligations of both SCM
and Muller were contingent upon execution and delivery of the
formal contract documents").

Beekman argues that there are numerous confirmations,
outside of the LOI, of the parties' agreement to expense
reimbursement that would support a claim of promissory estoppel.
Beekman relies on two pieces of evidence to support this
assertion. The first, an e-mail from Amato to Troiano sent on
April 18, 2005, shows at most that defendants agreed to the
inclusion of this term in the LOI. Given that the LOI contains
an explicit statement of intent that it not create a binding
agreement, there is no genuine issue of fact as to whether this
other communication creates a clear and unambiguous promise to
reimburse expenses in the event a contract never materializes.
The second, a letter from Amato to Troiano sent September 20,
2005, could suggest that there was some disagreement between the

parties as to when reimbursement would be appropriate pursuant to the term described in the LOI. But this letter confirms, even when viewed in the light most favorable to Beekman, that the original source of any promise of reimbursement was the disputed term in the LOI. That term, as explained above, cannot give rise to a claim of promissory estoppel as a matter of law, and the letter does not suggest that defendants ever made a separate promise of reimbursement that would support such a claim.

5. Unjust Enrichment

In its fourth and final cause of action, Beekman alleges that its expenditures on due diligence amounted to an unjust enrichment of defendants, for which it is owed restitution. "To prevail on a claim for unjust enrichment in New York, a plaintiff must establish (1) that the defendant benefitted; (2) at the plaintiff's expense; and (3) that equity and good conscience require restitution." Kaye, 202 F.3d at 616 (citation omitted). Beekman alleges that defendants benefitted from the legal and financial analysis that Beekman performed in preparation for the execution of a purchase agreement in that defendants were "free to enjoy" the results of Beekman's due diligence.

Under New York law, however, "unjust enrichment is not an appropriate remedy for recovery of the expenses of a failed negotiation." Chaterjee, 687 N.Y.S.2d at 365; accord Songbird Jet Ltd., Inc. v. Amax, Inc., 581 F. Supp. 912, 926 (S.D.N.Y. 1984); Metal Cladding, Inc. v. Brassey, 553 N.Y.S.2d 255, 255

(4th Dep't 1990). "Every businessman faces the risk that the
substantial transaction costs necessary to bring about a mutually
beneficial contract will be lost if the negotiations fail to
yield a satisfactory agreement." <u>Gruen Industries, Inc. v.
Biller</u>, 608 F.2d 274, 282 (7th Cir. 1979). Equity and good
conscience do not require otherwise, particularly where a party
to negotiations seeks to recoup expenses that it had made a
condition precedent to the execution of a final agreement.
Because Beekman does not state a claim under New York law for
unjust enrichment, defendants are entitled to judgment as a
matter of law on this claim as well.[5]


## CONCLUSION

Defendants are entitled to judgment as a matter of law with
respect to all four claims brought by Beekman. The first two,
breach of contract and breach of the implied covenant of good
faith, fail for lack of a binding contract between the parties.
The third, promissory estoppel, fails for lack of a clear and
unambiguous promise and inability to prove reasonable detrimental

---

[5] That the defendants may be, as Beekman argues, "free to enjoy"
the results of the due diligence that it performed to assure
itself that the company was a good investment, is insufficient to
create unjust enrichment. <u>Cf.</u> <u>Kaye v. Grossman</u>, 202 F.3d 611,
616 (2d Cir. 2000) (explaining that evidence suggesting that a
party "received some indirect benefit . . . does not establish
the specific and direct benefit necessary to support an unjust
enrichment claim").

reliance.  The fourth and final claim, unjust enrichment, is not available under New York law for the recovery of expenses incurred in the course of failed negotiations.  There being no genuine issue of fact relevant to any of these claims, the defendants' converted motion for summary judgment is granted.

SO ORDERED:

Dated:     New York, New York
           February 14, 2006

_____
Denise Cote
United States District Judge